**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**ADEBOWALE OJO,**

      Plaintiff,

**v.**                                                      **CIVIL ACTION NO.: 3:21-CV-150
(GROH)**

**JEFF S. SANDY, personally and in his
official capacity as Secretary of West Virginia
Department of Military Affairs and Public Safety,
BETSY JIVIDEN, personally and in her official
capacity as Department of Corrections Commissioner,
JOHN SHEELEY, personally and in his official
capacity as Eastern Regional Jail Warden/Superintendent,
ABRAHAM ARTHUR BEAN, correctional officer, personally
and in his official capacity, and
VINCENZO CARINELLI, correctional officer, personally
and in his official capacity,**

      Defendants.

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT BEAN'S
MOTION TO DISMISS, GRANTING DEFENDANTS SANDY, JIVIDEN AND SHEELY'S
MOTION TO DISMISS, GRANTING IN PART AND DENYING IN PART DEFENDANT
CARINELLI'S MOTION TO DISMISS AND DENYING AS MOOT THE DEFENDANTS'
JOINT MOTION TO STAY DISCOVERY**

Now pending before the Court are Defendant Bean's Motion to Dismiss [ECF No.

4], Defendants Sandy, Jividen and Sheeley's Motion to Dismiss [ECF No. 5], Defendant

Carinelli's Motion to Dismiss [ECF No. 9] and the Defendants' Joint Motion to Stay

Discovery [ECF No. 13].  The Plaintiff has filed a Response to each of the Defendants'

motions.  ECF Nos. 10, 15, 17.  The Defendants, in turn, filed Replies to the Plaintiff's

respective Reponses.  ECF Nos. 11, 12, 16, 18.  Accordingly, the motions to dismiss and

the motion to stay discovery are ripe for adjudication.

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background[1]

In either September or December of 2018,[2] Adebowale Ojo ("Plaintiff") was incarcerated at the Eastern Regional Jail in Martinsburg, West Virginia.  At some point around this time period, another inmate's misbehavior resulted in the loss of yard time for the Plaintiff's entire section.  The Plaintiff complained to Defendant Carinelli about his loss of yard time, as well as how he was treated by Defendant Bean.  The Plaintiff alleged that Defendant Bean acted belligerently and called him a "punk ass bitch."  ECF No. 1-1, Compl. ¶ 12.

Defendant Bean overheard the Plaintiff complaining to Defendant Carinelli, approached the Plaintiff from behind and placed the Plaintiff in a choke hold.  Defendant Bean then began to body slam the Plaintiff.  The Plaintiff was restrained on the ground by ERJ correctional officers.   After he was restrained, the correctional officers pulled down the Plaintiff's pants, kneed the Plaintiff's testicles repeatedly and pepper-sprayed the Plaintiff's testicles.  The correctional officers then transported the Plaintiff to "the hole." ECF No. 1-1, Compl. ¶ 16.

While detained in the hole, the Plaintiff experienced severe burning in his testicles and constant pressure in his anus. The Plaintiff made multiple requests for medical attention, but each request was denied.

---

[1] When reviewing a motion to dismiss, the Court assumes that the Plaintiff's "well-pleaded factual allegations" are true.   Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Accordingly, in this Order, the Court recites the facts as alleged in the Plaintiff's Complaint.  ECF No. 1-1.

[2] The Facts Section of the Plaintiff's Complaint begins by describing the underlying events as taking place "[o]n or about September of 2018."  ECF No. 1-1, Compl. ¶ 11.  However, the Facts Section concludes by referring to "the events of December 3, 2018."  ECF No. 1-1, Compl. ¶ 20.  The Plaintiff describes the events as happening over a matter of days, not weeks, and certainly not months.  The Plaintiff did not attach any documentation in support of his Complaint to assist the Court in determining when the alleged incident occurred.

As a result of the altercation between the Plaintiff and Defendants Bean and Carinelli, the Plaintiff was charged with obstruction.  Some days after the incident, the Plaintiff attended a hearing for his charge of obstruction.  The hearing resulted in a finding of not guilty for the Plaintiff.

### B. Procedural History

On September 30, 2019, the Plaintiff filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 against Defendant Bean, Defendant Carinelli and two other Defendants based on the facts described above.  ECF No. 1 in 1:19-CV-187-TSK-MJA.  The Plaintiff, after obtaining representation of counsel, filed a second civil rights action pursuant to 42 U.S.C. § 1983 on October 31, 2019.  ECF No. 1 in 3:19-CV-185.  The Plaintiff's initial case was dismissed without prejudice in order to allow the Plaintiff to proceed solely in his later filed case.  ECF No. 29 in 1:19-CV-187-TSK-MJA.

In his second case, the Plaintiff filed suit jointly with five other plaintiffs who were also incarcerated in the Eastern Regional Jail.  The Plaintiff twice amended his complaint [ECF Nos. 6, 16 in 3:19-CV-185], in one instance adding an additional plaintiff, before the Court severed the civil action into six separate cases, one for each plaintiff [ECF No. 28 in 3:19-CV-185].  On October 9, 2020, the Plaintiff filed an Amended Complaint in his third case, which alleged the same facts and causes of actions against the same defendants as the Plaintiff's instant case.  ECF No. 7 in 3:20-CV-167.  This Court dismissed without prejudice the Plaintiff's third case for failure to prosecute.[3]

---

[3] The Court notes that the Plaintiff, in his Responses [ECF Nos. 10, 15 in 3:21-CV-150] repeatedly misstates the procedural history as it relates to the dismissal of 3:20-CV-167.  In his Responses, the Plaintiff claims that his earlier case was dismissed because he "had failed to correct deficient pleadings by November 1, 2020, which was a Sunday," and instead submitted his filing on Monday, November 2.  ECF No. 10 at 3 in 3:21-CV-150; ECF No. 15 at 3 in 3:21-CV-150.  The Plaintiff explains that the Court set a deadline of November 1, 2020, to submit his Motion to Proceed in District Court Without Prepayment of Costs.  The Plaintiff filed his motion on November 2, 2020.  The Plaintiff claims that this Court dismissed his case

On April 29, 2021, the Plaintiff filed the instant complaint in the Circuit Court of Berkeley County, West Virginia.  ECF No. 1-1 in 3:21-CV-150.  Therein, the Plaintiff asserts six causes of action.  Count One alleges a violation of the Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment against Defendants Bean and Carinelli.  Count Two alleges a violation of the Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment against Defendants Sandy, Jividen and Sheeley.  Count Three alleges a violation of the Plaintiff's Fifth Amendment right to due process against all Defendants.  Count Four raises a negligent training and oversight and failure to act on repeated constitutional violations claim against Defendants Sandy, Jividen and Sheeley.  Count Five raises an assault and battery claim against Defendants Bean and Carinelli.  Count Six raises an intentional infliction of emotional distress (IIED) claim against all Defendants.  At the time of the events underlying the Plaintiff's Complaint, Defendants Bean and Carinelli ("Correctional Defendants") were both employed as correctional officers at the Eastern Regional Jail.  Defendants Sandy, Jividen and Sheeley ("Administrator Defendants") all held administrative positions with either the State of West Virginia or the Eastern Regional Jail.

On September 15, 2021, Defendant Bean removed the Plaintiff's case from state court to this Court pursuant to 28 U.S.C. §§ 1331, 1441(a), 1446.  ECF No. 1.  Defendant Bean then filed a Motion to Dismiss [ECF No. 4], to which the Plaintiff responded [ECF No. 10] and Defendant Bean replied [ECF No. 11].  The Administrator Defendants filed a

---

because he filed his Application on Monday, November 2, instead of Sunday, November 1.  The Court did not.  The Court *granted* the Plaintiff's Motion to Proceed Without Prepayment of Fees and directed him to pay the initial partial filing fee of $34.00 within twenty-eight days of entry of that Order.  ECF No. 13 in 3:20-CV-150.  After more than sixty days had lapsed without payment, the Court dismissed the Plaintiff's third section 1983 case on January 11, 2021.  ECF No. 15.

joint Motion to Dismiss [ECF No. 5], to which the Plaintiff responded [ECF No. 10] and the Administrator Defendants replied [ECF No. 12].   Defendant Carinelli also filed a Motion to Dismiss [ECF No. 9], to which the Plaintiff responded [ECF No. 15] and Defendant Carinelli replied [ECF No. 16].  All the Defendants jointly filed a Motion to Stay Discovery [ECF No. 13], to which the Plaintiff responded [ECF No. 17] and the Defendants jointly replied [ECF No. 18].  All of the pending motions are thus ripe for adjudication, and each will be addressed in turn.

## II.   LEGAL STANDARDS

### A.  Failure to State a Claim

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to challenge the complaint's sufficiency in this regard by moving to dismiss a complaint for failing "to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Although the pleading standard under Rule 8 "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555).  Thus, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancements.'"  Id. (quoting Twombly, 550 U.S. at 555, 557).

When reviewing a Rule 12(b)(6) motion, the court assumes that the complaint's well-pleaded allegations are true, resolves all doubts and inferences in favor of the plaintiff

and views the allegations in a light most favorable to the plaintiff. Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999). Only factual allegations receive the presumption of truth. Iqbal, 556 U.S. at 678-79. A court may also consider facts derived from sources beyond the four corners of the complaint, including documents attached to the complaint, documents attached to the motion to dismiss "so long as they are integral to the complaint and authentic" and facts subject to judicial notice under Federal Rule of Evidence 201. Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

### B. 42 U.S.C. § 1983

The Plaintiff filed the instant civil rights action pursuant to 42 U.S.C. § 1983. Section 1983 does not itself provide any substantive rights. Instead, it is a procedural vehicle through which a plaintiff can enforce their constitutional rights against state actors. In relevant part, section 1983 allows a plaintiff to file suit against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . .." 42 U.S.C. § 1983.

To state a claim under section 1983, a plaintiff must allege that (1) a violation of a right secured by the Constitution or laws of the United States occurred and (2) a person acting under the color of state law committed the alleged violation. West v. Atkins, 487 U.S. 42, 48 (1988). In cases with multiple individual defendants, the plaintiff must plead that each defendant, through his or her own actions, caused the alleged constitutional injury. Iqbal, 556 U.S. at 676. Vicarious liability does not exist under section 1983. Id.

However, the Fourth Circuit does recognize the theory of supervisory liability under § 1983. A supervisor can be liable when (1) he knew that his subordinate "engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens

like the plaintiff," (2) the supervisor responded so inadequately as to show "deliberate indifference to or tacit authorization of the alleged offensive practices" and (3) an "affirmative causal link" existed between "the supervisor's inaction and the particular constitutional injury suffered by the plaintiff." Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Supervisory liability is not a claim in and of itself, but instead, it is a theory by which a plaintiff can hold a supervisor liable for a subordinate's constitutional violation committed. A constitutional violation must still be pled.

Further, different standards may apply depending on which constitutional right is implicated. The two constitutional protections implicated in this case are the Eighth Amendment right to be free from cruel and unusual punishment and the Fifth Amendment right to due process.

### 1. Eighth Amendment

When a plaintiff alleges that their Eighth Amendment right to be free from cruel and unusual punishment has been violated, two standards may apply. If the plaintiff alleges that they were denied medical care, then the "deliberate indifference" standard applies. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). If the plaintiff alleges excessive use of force, then the "malicious and sadistic use of force for the purpose of causing harm" standard applies. Whitley v. Albers, 475 U.S. 312, 320-21 (1986). The Plaintiff's complaint appears to implicate both standards.

Deliberate indifference lies somewhere between negligence and purposefulness. A state actor acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he

7

must draw the inference." <u>Farmer v. Brennan</u>, 511 U.S. 825, 837 (1994).  To succeed on a deliberate indifference claim, a plaintiff must first demonstrate, objectively, the existence of a serious medical need, and second, a plaintiff must show that the defendant, subjectively, knew of the underlying facts, the substantial risk of serious harm those facts presented, and drew the inference between the facts and the harm.  <u>Id.</u>

Unlike the deliberate indifference standard, which accounts for a state actor's time to weigh the facts presented to him and deliberate as to which course of action to take, the "malicious and sadistic use of force for the purpose of causing harm" standard applies to decisions made in haste, under pressure, and without the luxury of a second chance. <u>Whitley</u>, 475 U.S. at 320-21.  When a plaintiff alleges excessive force, the "core judicial inquiry" asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010) (first citing <u>Hudson v. McMillian</u>, 503 U.S. 1, 4 (1992) then citing <u>Whitley</u>, 475 U.S. at 319-21).  The Fourth Circuit has held that "the use of force on an inmate who is restrained and compliant and posing no physical threat" raises the specter of an impermissible motive.  <u>Thompson v. Virginia,</u> 878 F.3d 89, 102 (4th Cir. 2017); <u>see</u> <u>Rhodes v. Chapman</u>, 452 U.S. 337, 346 (1981) ("Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'").

### 2.  Fifth Amendment

As of the date of this Order, the Supreme Court has only allowed Fifth Amendment claims under section 1983 pursuant to the enforcement of the takings clause, <u>Knick v. Township of Scott</u>, 139 S. Ct. 2162 (2019), and a criminal defendant's right to be free from self-incrimination, <u>Chavez v. Martinez</u>, 538 U.S. 760 (2003).  As it pertains to the

right to due process, the Fifth Amendment's Due Process Clause applies to the federal government.  U.S. Const. amend V ("No person … shall …be deprived of life, liberty, or property, without due process of law . . .").  The Fourteenth Amendment's Due Process Clause applies to state and local governments.  U.S. Const. amend XIV ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law . . .").  Because section 1983 is a vehicle by which plaintiffs can assert claims against state actors, the Fifth Amendment is not the proper constitutional amendment to assert due process protections claims through.

### C. Qualified Immunity

While a motion to dismiss typically only focuses on the sufficiency of the plaintiff's complaint, "dismissal nevertheless is appropriate when the face of the complaint clearly reveals the existence of a meritorious affirmative defense," like qualified immunity.  Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011) (internal quotation marks omitted).  Here, almost all the Defendants, in one filing or another, claim the protection of qualified immunity.  The doctrine of qualified immunity protects government officials from civil liability so long as the offending official's conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

Qualified immunity serves to balance "two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  The legal question of whether a defendant is entitled to qualified immunity must be decided by the court, not the jury.  Willingham v. Crooke, 412 F.3d 553, 560 (4th Cir. 2005).  Therefore, "[u]nless a

plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Cloaninger v. McDevitt, 555 F.3d 324, 331 (4th Cir. 2009).

An official seeking to invoke the protections of qualified immunity "must demonstrate that (1) a plaintiff has not alleged or shown facts that make out a violation of a constitutional right, or that (2) the right at issue was [not] clearly established at the time of its alleged violation." Owens v. Balt. City State's Att'ys Off., 767 F.3d 379, 395-96 (4th Cir. 2014) (alteration in original) (internal quotation marks omitted).   "[C]ourts have discretion to decide which of the two prongs of [the] qualified-immunity analysis to tackle first." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011).

A right is clearly established when "its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" Carroll v. Carman, 574 U.S. 13, 17 (2014) (quoting Anderson v. Creighton, 483 U.S. 635, 640 (1987)).  The illegality of the official's conduct must be "apparent" in "light of pre-existing law." Anderson, 483 U.S. at 640.  Generally, a court need only look to decisions of the United States Supreme Court, the controlling court of appeals, and the highest court of the state where the case arose to determine whether the law clearly establishes a right. Owens ex rel. Owens v. Lott, 372 F.3d 267, 279 (4th Cir. 2004).  However, a plaintiff can pierce the veil of qualified immunity by citing "'to cases of controlling authority in their jurisdiction at the time of the incident' or to 'a consensus of cases of persuasive authority.'" Booker v. S.C. Dep't of Corr., 855 F.3d 533, 539 (4th Cir. 2017) (quoting Ashcroft, 563 U.S. at 742).

### III.    ANALYSIS

**A.  Defendant Bean's Motion to Dismiss [ECF No. 4]**

In his motion to dismiss, Defendant Bean argues that (1) all of the Plaintiff's claims are time barred by the statute of limitations, (2) the Plaintiff failed to state a claim for IIED, (3) the Plaintiff failed to state a claim for the violation of the Fifth Amendment and (4) all claims against him in his official capacity should be dismissed.   In his Response, the Plaintiff argues that his claims are not time barred under West Virginia Code § 55-2-18, the "savings statute."   As it pertains to his Fifth Amendment claim, the Plaintiff asserts, with no support, that the Fifth Amendment has been incorporated against the States through the Fourteenth Amendment.   As a secondary argument, the Plaintiff asserts that his error "is little more than a typo" and requests leave to amend.   The Plaintiff did not respond to Defendant Bean's arguments that he failed to raise a sufficient claim of IIED or that all of the claims against Defendant Bean in his official capacity should be dismissed.

**1.  Statute of Limitations**

When a claim is brought pursuant to 42 U.S.C. § 1983, it "borrows" the most analogous state statute of limitations.  Owens v. Okure, 488 U.S. 235, 240 (1989).  Upon review of the facts and claims alleged by the Plaintiff in his complaint, the most analogous state statute is the statute of limitations for personal injury actions.   In West Virginia, the statute of limitations for personal injury actions is two years.  W. Va. Code § 55-2-12(b).  However, the West Virginia Code also includes a "savings statute," which extends the statute of limitations by one year, if "the *initial* pleading was timely filed" and then "involuntarily dismissed for any reason not based upon the merits" or "the judgement was

reversed on a ground which does not preclude a filing of new action for the same cause."

W.Va. Code § 55-2-18(a) (emphasis added).

Here, the incident underlying the Plaintiff's claims occurred in either September or December of 2018.  The Plaintiff first filed a civil action on these facts pursuant to section 1983 on September 30, 2019.  ECF No. 1 in 1:19-CV-187-TSK-MJA.   This first action was timely filed.  While the Plaintiff asserts that his case was originally filed on October 31, 2019, and that his extension should begin from the Court's dismissal in 3:20-CV-167 on January 11, 2021, the Court finds that the extension begins from the June 16, 2020, dismissal in 1:19-CV-187-TSK-MJA.  The Plaintiff's initial section 1983 pleading on these facts was filed on September 30, 2019, and dismissed on June 16, 2020.  ECF Nos. 1, 29 in 1:19-CV-187-TSK-MJA.  The Plaintiff does not get to pick and choose which of his many cases apply.  Nevertheless, the savings statute extended the Plaintiff's time to file to June 16, 2021, and the Plaintiff filed the instant complaint on April 29, 2021, placing it within the applicable statute of limitations period.

The Court notes that the Plaintiff brought his civil action pursuant to 42 U.S.C. § 1983 but has also included multiple causes of action that appear to arise under state law, specifically assault and battery and intentional infliction of emotional distress.  However, the same statute of limitation analysis applies to these claims as well.  West Virginia's statute of limitations for battery and intentional infliction of emotional distress are also two years.  W. Va. Code § 55-2-12(b); Richards v. Walker, 813 S.E.2d 923, 930 (W.Va. 2018) ("[T]he circuit court correctly determined that the statute of limitations for a claim of intentional infliction of emotional distress is two years."); Courtney v. Courtney, 437 S.E.2d 436, 439 (W. Va. 1993) ("Thus, it is clear that damages for personal injuries arising

out of an assault and battery are controlled by the two-year statute of limitations contained in W. Va. Code § 55-2-12(b).").

However, the Plaintiff did not include claims of assault and battery and IIED in his initial filing in 1:19-CV-187-TSK-MJA. The Plaintiff raised these claims for the first time in the complaint filed in 3:20-CV-167 on October 31, 2019. This complaint was also timely filed. The Court dismissed without prejudice the Plaintiff's complaint in 3:20-CV-167 on January 11, 2021, extending the Plaintiff's statute of limitations under West Virginia Code § 55-2-18(a) to January 11, 2022, for his assault and battery and IIED claims. Again, the Plaintiff filed the instant complaint on April 29, 2021, placing it within the applicable statute of limitations period for these state law claims as well.

Therefore, Defendant Bean's motion to dismiss on the grounds that all of the Plaintiff's claims are time barred is **DENIED**.

### 2. Count Three: Fifth Amendment Violation

A due process cause of action under the Fifth Amendment against state actors is not actionable under section 1983. The Fifth Amendment's Due Process Clause applies to the federal government, while the Fourteenth Amendment's Due Process Clause applies to state and local governments. Dusenbery v. United States, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law." (internal quotations omitted)); see also Lugar v. Edmonson Oil Co., 457 U.S. 922 (1982) (equating "state action" under Fourteenth Amendment with "under color of law" for section 1983 purposes). Section 1983 is a vehicle by which plaintiffs can assert claims against state

actors, making the Fourteenth Amendment the proper constitutional amendment to enforce due process protections.  U.S. Const. amend XIV ("[N]or shall any *State* deprive any person of life, liberty, or property, without due process of law . . ." (emphasis added)).  Because the Plaintiff has pled his due process claim under the Fifth Amendment, this claim is not actionable under section 1983 and must be dismissed.

In his Response to Defendant Bean's motion, the Plaintiff argues that the Fifth Amendment has been incorporated against the States through the Fourteenth Amendment.  The Plaintiff cites no support for his assertion.  The Court, upon review of section 1983 precedent, finds that the Supreme Court has only allowed Fifth Amendment claims under section 1983 pursuant to the enforcement of the takings clause, Knick, 139 S.Ct. 2162, and a criminal defendant's right to be free from self-incrimination, Chavez, 538 U.S. 760.   On the other hand, section 1983 claims alleging due process violations under the Fourteenth Amendment are a staple in section 1983 litigation.  E.g. Fuentes v. Shevin, 407 U.S. 67 (1972); Wolff v. McDonnell, 418 U.S. 539 (1974); Daniels v. Williams, 474 U.S. 327 (1986).

The Plaintiff further asserts that the mix-up is "little more than a typo," [ECF No. 10 at 10] and requests leave to amend.  The Court finds this error to be more than a typo.  The Fifth and Fourteenth Amendments are distinct, and in no instance would this Court read in implicit violations of one amendment when a plaintiff explicitly pleads the violation of another.  The Plaintiff did not file this complaint *pro se*, and thus the Court is not required to so liberally construe it.  Additionally, as described in the Procedural History section above, the Plaintiff has been afforded numerous opportunities in multiple cases to amend his complaint.  It is not the Court's role nor responsibility to hold the Plaintiff's

14

hand and guide him in crafting his legal arguments, especially when, as in this case, the arguments stem from one of the most foundational legal sources in the American legal system: the Constitution.

Accordingly, Defendant Bean's motion to dismiss Count Three of the Plaintiff's Complaint is **GRANTED**.

### 3. Count Six: IIED

The Plaintiff brought his civil action pursuant to 42 U.S.C. § 1983, which affords plaintiffs the means to enforce their constitutional rights against state actors.  However, IIED is not a constitutional violation, and the Plaintiff does not assert under what authority he brings this cause of action.   Nonetheless, the Court finds it has supplemental jurisdiction over the Plaintiff's state law claim as it is "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367.

The Court interprets Count Six as arising under West Virginia common law. Harless v. First Nat. Bank in Fairmont, 169 W. Va. 673, 693 (1982) (equating the tort of outrage with intentional infliction of emotional distress).  To succeed on a claim for intentional infliction of emotional distress, a plaintiff must show that (1) "the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency," (2) "the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct" (3) "the actions of the defendant caused the plaintiff to suffer emotional distress" and (4) "the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it."  Travis v. Alcon Lab'ys, Inc.,

504 S.E.2d 419, 425 (W.Va. 1998).   A plaintiff is required to plead facts satisfying all four elements.

The Plaintiff's claim fails on the fourth element. The Plaintiff's complaint is devoid of any description of the emotional distress he suffered.  In neither the Facts Section nor the Claims Section does the Plaintiff plead any detail regarding the emotional distress suffered.   In each paragraph the Plaintiff describes his injury as "severe emotional distress."   ECF No. 1-1, Compl. ¶¶ 21, 50, 51, 52.   This pleading does not meet the standard of "so severe that no reasonable person could be expected to endure it."  Travis, 504 S.E.2d at 425; Patrick v. PHH Mortg. Corp., 937 F. Supp. 2d 773, 791 (N.D. W.Va. 2013) ("Although Plaintiffs state in a conclusory fashion that they suffered extreme emotional distress that no reasonable person could endure, they plead no facts describing such distress, any physical, mental, or emotional injuries, any treatment, or the impact such suffering has had on their lives.").  Therefore, because the Plaintiff "tenders 'naked assertions' devoid of 'further factual enhancements,'' the Court finds that the Plaintiff has failed to state a claim of IIED.  See Ashcroft, 556 U.S. at 678.

Moreover, the Plaintiff's IIED claim is duplicative of his claim for assault and battery.   Both claims arise out of the same underlying event and injuries. The West Virginia Supreme Court of Appeals "treats claims for outrage and assault battery arising from the same events duplicative."  Searls v. W. Virginia Reg'l Jail, 2016 WL 4698547, at *4 (S.D. W. Va. 2016) (citing Criss v. Criss, 356 S.E.2d 620 (W. Va. 1987)).  West Virginia state "law does not permit a double satisfaction for a single injury," so the Plaintiff "may not recover damages twice for the same injury simply because he has two legal theories." See Harless, 289 S.E.2d at 697.  Indeed, "[b]ecause an action for assault and battery

allows for recovery of damages due to resulting emotional distress, a claim for the tort of outrageous conduct is duplicitous of a claim for assault and battery where both claims arise from the same event."  Criss, 356 S.E.2d at 620.

Accordingly, Defendant Bean's motion to dismiss Count Six of the Plaintiff's complaint is **GRANTED**.

### 4. Official Capacity

Defendant Bean is named in both his personal and official capacity in the Plaintiff's complaint.  By naming the Defendant in his official capacity, it is no different than naming the State of West Virginia itself.  Lewis v. Clarke, 137 S.Ct. 1285, 1291 (2017) ("In an official-capacity claim, the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself." (citing Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989))).  The Eleventh Amendment prohibits a plaintiff from filing suit against a state government in federal court.  U.S. Const. amend. XI.

Particularly, the Court has repeatedly held that states cannot be sued for monetary damages pursuant to section 1983. Will, 491 U.S. at 66 ("Section 1983 provides a federal forum to remedy many deprivations of civil liberties, but it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties. . . . Congress, in passing § 1983, had no intention to disturb the States' Eleventh Amendment immunity.); Kentucky v. Graham, 473 U.S. 159, 167 (1985) ("[I]mmunities that can be claimed in an official-capacity action are forms of sovereign immunity that the entity, *qua entity*, may possess, such as the Eleventh Amendment.").   With regard to claims made pursuant to section 1983, "[n]either a State nor its officials acting in their official capacities are 'persons under § 1983." Will, 491 U.S. at 71.

Here, Defendant Bean asserts that he cannot be sued in his official capacity. Indeed, the Court finds that Defendant Bean is immune from suit in his official capacity due to the protections afforded him by sovereign immunity.  Accordingly, Defendant Bean's motion to dismiss all claims against him in his official capacity is **GRANTED**.

### 5.  Conclusion

For the reasons stated more fully above, the Court **GRANTS IN PART AND DENIES IN PART** Defendant Bean's Motion to Dismiss [ECF No. 4].  The Court **DISMISSES** all counts against Defendant Bean in his official capacity due to sovereign immunity.  The Court **FURTHER DISMISSES** Counts Three and Six against Defendant Bean in his personal capacity for failure to state a claim upon which relief can be granted. Counts One and Five remain pending against Defendant Bean in his personal capacity.

### B.  Administrator Defendants' Motion to Dismiss [ECF No. 5]

In their motion to dismiss, the Administrator Defendants' argue that (1) the Plaintiff has failed to plead facts plausibly suggestive of a claim for relief; (2) the Administrator Defendants are protected by qualified immunity; (3) the Plaintiff's claims fail against the Administrator Defendants in their official capacity because the Administrator Defendants are protected by sovereign immunity; and (4) all causes of action asserted by the Plaintiff are time barred.  In Response, the Plaintiff argues that he pled sufficient facts to allow the Court to draw the reasonable inference that the Administrator Defendants are liable for misconduct, on both a theory of supervisory liability and deliberate indifference.  Further, the Plaintiff argues that his claims are not time barred due to the savings statute promulgated in West Virginia Code § 55-2-18(a).  Lastly, the Plaintiff asserts that the Administrator Defendants are not protected by qualified immunity.

### 1. Failure to State a Claim in Counts Two, Three, Four, and Six

The Administrator Defendants are named in Counts Two, Three, Four and Six of the Plaintiff's complaint.  The Administrator Defendants argue that the Plaintiff has failed to state a plausible claim for relief against them in any of the Counts alleged.  Indeed, this Court agrees.

The causes of action raised against the Administrator Defendants are lacking in any actionable detail.  Instead, the Plaintiff's complaint presents legal conclusions, wherein the Plaintiff recites the elements of a cause of action and asserts that the Administrator Defendants have taken actions that satisfy the pertinent elements. However, the Court is without any knowledge of what those actions may be.

Beginning with Count Two, the Plaintiff asserts that the Administrator Defendants "established a policy or custom of allowing correctional officers to engage in cruel and unusual punishment as a means of keeping inmates 'in line' and deterring noncompliance."  ECF No. 1-1, Compl. ¶ 30.  This statement is a legal conclusion. Similarly, the Plaintiff also alleges that the Administrator Defendants established a "policy, custom, pattern and practice of encouraging, either explicitly or by their deliberate indifference, the denial of medical care to prisoners following use of force incidents."  ECF No. 1-1, Compl. ¶ 34.  Again, the Plaintiff regurgitates the elements of a claim and hopes that it will stick to the Administrator Defendants.

The remainder of Count Two is similarly fruitless as the Plaintiff only expands upon his legal conclusion to state that the Administrator Defendants "aided and abetted 8th amendment violations" by "making efforts," "making it more difficult," "making it difficult," and taking "other acts."  ECF No. 1-1, Compl. ¶ 33.  Further, the Administrator Defendants

are not mentioned in the Facts Section of the Plaintiff's complaint, as a group or individually. Therefore, the Court is without knowledge, and the Administrators are without notice, of the facts supporting the Plaintiff's claims.

Indeed, in cases with multiple individual defendants, the plaintiff must plead that each defendant, through his or her own actions, caused the alleged constitutional injury. Iqbal, 556 U.S. at 676. Throughout the Plaintiff's complaint, the Administrator Defendants are only ever referred to together. The Court is unable to parse out any action taken by an individual Administrator Defendant. This issue is especially prominent in Count Three of the Plaintiff's complaint, wherein all the named Defendants are referred to jointly as "taking various measures" that amount to a Fifth Amendment violation. This conclusion is not sufficient to state a claim of a Fifth Amendment violation. Further, as described in full above, the Fifth Amendment is not the proper amendment to assert due process violations against state actors under section 1983.

Next, in Count Four, the Plaintiff asserts a claim of negligent training and oversight against the Administrator Defendants. However, the Plaintiff brought this civil action pursuant to section 1983, which allows plaintiffs to enforce their constitutional rights against public officials. Because Count Four references "repeated and pervasive 8th amendment violations," the Court will construe this cause of action as alleging a theory of supervisory liability against the Administrator Defendants for Eighth Amendment violations.

To hold a supervisor liable for constitutional violations committed by a subordinate, a plaintiff must show that (1) a supervisor knew his subordinate "was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the

plaintiff," (2) the supervisor's response was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices" and (3) an "affirmative causal link" existed between "the supervisor's inaction and the particular constitutional injury suffered by the plaintiff."  Shaw, 13 F.3d at 799.  Supervisory liability places "a heavy burden of proof" on a plaintiff.  Id.  To prove just the first element, a plaintiff must show "that the conduct is widespread, or at least has been used on several different occasions."  Id.  Further, to prove the second element, a plaintiff must show the "supervisor's continued inaction in the face of documented widespread abuses."  Id.

Again, the Plaintiff fails to provide the Court with sufficient information to recognize a plausible claim.  The Plaintiff makes multiple references to repeated violations, yet only one incident was described in the complaint.  The Plaintiff again refers to the Administrator Defendants together and asserts that all of them allowed "repeated and pervasive 8th amendment violations" to occur and failed "to take adequate measures to properly train its officers on means by which enforce compliance with its rules without violating prisoner's Constitutional rights."  ECF No. 1-1, Compl. ¶¶ 40, 41.  Here, the plaintiff once more fails to plead that each defendant, through his or her own actions, caused the alleged constitutional injury.  See Iqbal, 556 U.S. at 676.

Further, the Plaintiff has failed to plead facts satisfying any of the three Shaw factors.  The Plaintiff presents no facts showing that any of the individual Administrator Defendants knew of the incident that occurred between the Plaintiff and Defendants Bean and Carinelli.  Indeed, as the Plaintiff does not show the Administrator Defendants had knowledge of any potential constitutional issues, the Plaintiff does not show how any of the Administrator Defendants responded so inadequately as to show deliberate

indifference to or tacit authorization of the alleged offensive practices.  Lastly, the Plaintiff does not allege any facts that would allow the Court to even draw an inference that a causal link existed between the Administrator Defendants' inaction and the particular constitutional injury suffered by the Plaintiff.   The Administrator Defendants are not mentioned once in the Facts Section of the Plaintiff's complaint, leaving the Court to infer instead that the Administrator Defendants played no role in the alleged constitutional violation.

Lastly, the Plaintiff asserts a claim of IIED against the Administrator Defendants. Therein, the Plaintiff alleges that all of the Defendants either intentionally tortured or established a policy promoting intentional torture of inmates.  To succeed on a claim for intentional infliction of emotional distress, a plaintiff must show that (1) "the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency," (2) "the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct," (3) "the actions of the defendant caused the plaintiff to suffer emotional distress" and (4) "the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it."  Travis, 504 S.E.2d at 425.

Again, the Court is unable to parse out any individual action taken by any of the Administrator Defendants, let alone conduct that "was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency."  Id.  Further, as the Court noted previously when adjudicating Defendant Bean's motion to dismiss, the Plaintiff's complaint is devoid of any description of the emotional distress suffered by the Plaintiff.

Therefore, the Court finds that the Plaintiff has failed to state a claim of IIED against the Administrator Defendants as well.

Ultimately, the Court finds that the Plaintiff has failed to sufficiently allege a single cause of action against any of the three Administrator Defendants. Accordingly, the Administrator Defendants' motion to dismiss for failure to state a claim is **GRANTED**.

### 2. Qualified Immunity

The Administrator Defendants also assert that they are entitled to the protection of qualified immunity. The Administrator Defendants argue that the Plaintiff has not alleged facts that make out a violation of a constitutional right. See Owens, 767 F.3d at 395-96. Indeed, as discussed immediately above, the Court similarly finds that the Plaintiff has failed to present facts describing a constitutional violation committed by any of the Administrator Defendants, thus satisfying the first prong of the test for qualified immunity. Id. (holding that the two prongs of qualified immunity are "(1) a plaintiff has not alleged or shown facts that make out a violation of a constitutional right, or that (2) the right at issue was [not] clearly established at the time of its alleged violation."). Because "courts have discretion to decide which of the two prongs of [the] qualified-immunity analysis to tackle first," Ashcroft, 563 U.S. at 735, the Court finds that the Administrator Defendants have successfully invoked the protection of qualified immunity.

However, a plaintiff can pierce the veil of qualified immunity by citing "'to cases of controlling authority in their jurisdiction at the time of the incident' or to 'a consensus of cases of persuasive authority.'" Booker, 855 F.3d at 539 (quoting Ashcroft, 563 U.S. at 742). In his Response, the Plaintiff argues that "every cause of action asserted by Plaintiff, if true, amounts to violations of clear established rights for which a reasonable

person would have known, and relate to unequivocally established Constitutional, statutory, and common law prohibitions on intentional misconduct."  ECF No. 10 at 11. The Plaintiff does not cite to any source of authority to support his argument.  Therefore, the Court finds that the Plaintiff has not pierced the veil of qualified immunity.

Accordingly, the Administrator Defendants' motion to dismiss due to the protection of qualified immunity is **GRANTED**.

### 3.  Sovereign Immunity

The Administrator Defendants raise the protection of sovereign immunity against all the Plaintiff's claims against them in their official capacities.  The Plaintiff did not respond to the Administrator Defendants' assertion of sovereign immunity.

As discussed above in relation to Defendant Bean's motion to dismiss, by naming the Defendants in their official capacities, it is no different than naming the State of West Virginia itself.  Lewis, 137 S. Ct. at 129.  The Eleventh Amendment prohibits a plaintiff from filing suit against a state government in federal court.   U.S. Const. amend. XI.  With regard to claims made pursuant to section 1983, "[n]either a State nor its officials acting in their official capacities are 'persons under § 1983."  Will, 491 U.S. at 71.

Accordingly, the Court finds that the Administrator Defendants are entitled to the protection of sovereign immunity for the claims against them in their official capacity. Therefore, the Administrator Defendants' motion to dismiss the claims against them in their official capacity is **GRANTED**.

### 4.  Statute of Limitations

Lastly, the Administrator Defendants assert that all of the Plaintiff's causes of action are time barred.  In response, the Plaintiff argued that the statute of limitations did

not expire and instead was extended under West Virginia Code § 55-2-18.   Indeed, as discussed more fully above, the statute of limitations for the Plaintiff's claims did not expire prior to him filing the instant complaint.   Accordingly, the Administrator Defendant's motion to dismiss all claims against them on the basis that the Plaintiff's claims are time-barred is **DENIED**.

### 5.   Conclusion

The Court **GRANTS** the Administrator Defendant's Motion to Dismiss [ECF No. 5]. The Administrator Defendants are dismissed from all Counts in the Plaintiff's complaint because the Plaintiff failed to state a plausible claim against any of the Administrator Defendants.   Further, the Administrator Defendants are protected by qualified immunity for the claims against them in their personal capacity and by sovereign immunity for the claims against them in their official capacity.

### C.  Defendant Carinelli's Motion to Dismiss [ECF No. 9]

In his motion to dismiss, Defendant Carinelli argues that (1) the Plaintiff's claims are time-barred, (2) the Plaintiff failed to state an Eighth Amendment claim, (3) the Plaintiff failed to state a claim for IIED, (4) the Plaintiff failed to state a Fifth Amendment claim, (5) he is protected by qualified immunity and (6) he cannot be sued in his official capacity under section 1983.   In Response, the Plaintiff argues that the statute of limitations for his claims had not expired when he filed the instant complaint.   The Plaintiff further argues that the allegations set forth in his complaint do implicate Defendant Carinelli in an Eighth Amendment violation and IIED claim.   The Plaintiff avers that the references to "correctional officers" or "COs" in his complaint refer to Defendant Carinelli.   The Plaintiff similarly argues that Defendant Carinelli was present and participating in the excessive

force initiated by Defendant Bean.  Lastly, the Plaintiff contends that Defendant Carinelli is not protected by qualified immunity.

### 1. Statute of Limitations

As addressed above, the Plaintiff's statute of limitations had not yet expired when he filed the instant complaint in this action.   West Virginia Code § 55-2-18(a) extends the statute of limitation for any claim that was previously timely filed and then dismissed for any reason not based upon the merits.  The statute extends the time for filing by one year from the date of the dismissal.

Based upon the procedural history in this case, the Plaintiff's initial pleading against Defendant Carinelli on these facts was filed on September 30, 2019, in 1:19-cv-187- TSK-MJA.   This prior case was dismissed without prejudice on June 16, 2020, extending the Plaintiff's time to file to June 16, 2021.   The Plaintiff filed the instant complaint on April 29, 2021, placing him in compliance with the statute of limitations for this case.

Accordingly, Defendant Carinelli's motion to dismiss all claims against him as time-barred is **DENIED**.

### 2. Count One: Eighth Amendment Violation

Defendant Carinelli argues that the Plaintiff failed to plead any specific allegations against him other than that he was present during the Plaintiff's altercation with Defendant Bean. The Plaintiff contends that the allegations set forth in his complaint allow for a reasonable inference that Defendant Carinelli contributed to the violation of the Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.  In particular, the Plaintiff avers that when the complaint refers to "correctional officers" or "COs," these

references include Defendant Carinelli. The Court finds that this is a reasonable inference. Indeed, in this Order the Court itself has separated the Defendants into Administrator Defendants and Correctional Officer Defendants, so it is reasonable for the Plaintiff to do so in his complaint. Further, the actions alleged by the Plaintiff may reasonably be committed by more than one individual at the same time.

Within his Eighth Amendment allegation, the Plaintiff asserts both an excessive use of force claim and a deliberate indifference to medical needs claim. When a plaintiff alleges excessive force, the "core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Wilkins, 559 U.S. at 37 (first citing Hudson, 503 U.S. at 4 then citing Whitley, 475 U.S. at 319-21). Specifically, the court must weigh the following factors when determining whether a prison official acted maliciously and sadistically to cause harm: (1) "the need for application of force," (2) "the relationship between the need and amount of force that was used," (3) "the extent of the injury," (4) "the threat reasonably perceived by the responsible official," and (5) "any efforts made to temper the severity of a forceful response." Whitley, 475 U.S. at 321.

Here, the Court finds that the weight of the Whitley factors falls in favor of a plausible claim of an excessive use of force. The complaint alleges that the Correctional Officer Defendants restrained the Plaintiff on the ground and then "pulled [the Plaintiff's] pants down and purposely began to knee [the Plaintiff] in his testicles repeatedly." ECF No. 1-1, Compl. ¶ 15. The complaint continues to describe that the Correctional Officer Defendants "sprayed pepper spray on [the Plaintiff's] testicles and took him to the hole." ECF No. 1-1, Compl. ¶ 16.

27

In regard to the first Whitley factor, the Court cannot determine what valid penological need was served by pulling the Plaintiff's pants down, kneeing him repeatedly in his testicles and then pepper spraying his testicles.  See Rhodes v. Chapman, 452 U.S. 337, 346 (1981) ("Among 'unnecessary and wanton' inflictions of pain are those that are 'totally without penological justification.'").  Indeed, the Fourth Circuit has held that "the use of force on an inmate who is restrained and compliant and posing no physical threat" raises the specter of an impermissible motive.  Thompson v. Virginia, 878 F.3d 89, 102 (4th Cir. 2017).  Similarly, without being able to identify a need for this type of force, the Court cannot justify the relationship between the need and amount of force used by the Correctional Officer Defendants' on the Plaintiff's genital area.

Further, as it pertains to pepper spray, the Fourth Circuit has held that deploying pepper spray can qualify as excessive force.  See Boone v. Stallings, 583 F. App'x 174, 176 (4th Cir. 2014); Iko v. Shreve, 535 F.3d 225, 239-40 (4th Cir. 2008).  While the use of pepper spray or chemical agents is not a *per se* constitutional violation, using pepper spray on a docile or compliant prisoner, or depriving a prisoner of a proper opportunity to fully decontaminate, including forcing them to remain in their contaminated clothes, demonstrates maliciousness and qualifies as excessive force. Iko, 535 F.3d at 239-41.  While the Plaintiff was unable to document his injuries in the hours or days after the incident, the Plaintiff has alleged that he experienced "severe burning in his testicles and constant pressure in his anus."  ECF No. 1-1, Compl. ¶ 17.

Next, in terms of the threat reasonably perceived by the officers, at the time the Plaintiff's pants were removed, the Plaintiff was already restrained on the floor.  If the Plaintiff had become agitated during his conversation with Defendant Carinelli, to the point

where he needed to be restrained, once the Plaintiff was restrained on the floor by multiple correctional officers, the threat posed by the Plaintiff likely subsided. Moreover, it is unclear what type of threat the Plaintiff could pose in this situation that would require a reasonable officer to remove the Plaintiff's pants and begin to strike and pepper spray his genital area.

Lastly, the Court cannot find any evidence of any attempt to temper the severity of force used against the Plaintiff. The incident appears to have ended when it ran its natural course. Therefore, the Court finds the Plaintiff has stated a plausible claim that Defendant Carinelli acted maliciously and sadistically to cause harm.

After this incident occurred, the Plaintiff further alleges that he was denied medical care. When a plaintiff alleges that they were denied medical care, the "deliberate indifference" standard applies. Estelle, 429 U.S. at 104-05. A state actor acts with deliberate indifference when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must draw the inference." Farmer, 511 U.S. at 837.

To succeed on a deliberate indifference claim, a plaintiff must first demonstrate, objectively, the existence of a serious medical need, and second, a plaintiff must show that the defendant, subjectively, knew of the underlying facts, the substantial risk of serious harm those facts presented, and drew the inference between the facts and the harm. Id. Here, the Court finds that the Plaintiff's complaint plausibly alleges the existence of a serious medical need: the Plaintiff's genital area was sprayed with a chemical agent. The Plaintiff alleges that after he was pepper sprayed, he was taken to

"the hole" and did not receive medical treatment.  Analyzing these facts in the light most favorable to the Plaintiff, it appears to the Court that the Plaintiff was left to suffer chemical burns without any medical intervention or treatment.

For the subjective prong of the test, it follows that the Correctional Officers who used the excessive force against the Plaintiff knew of the underlying facts, the substantial risk of serious harm at play and drew the inference between the two.  See Farmer, 511 U.S. at 837.  Indeed, the Plaintiff's complaint alleges that the same Correctional Officers who pepper sprayed him also transported him to "the hole" instead of to a medical professional for treatment.  Therefore, the Court finds that the Plaintiff has alleged a plausible deliberate indifference claim against Defendant Carinelli.

Accordingly, Defendant Carinelli's motion to dismiss the Plaintiff's Eighth Amendment cause of action for failure to state a claim is **DENIED**.

### 3.  Count Six:  IIED

As discussed more thoroughly above, the Court interprets Count Six as arising under West Virginia common law.  Harless, 169 W. Va. at 693 (equating the tort of outrage with intentional infliction of emotional distress); Travis, 504 S.E.2d at 425 (listing the elements of IIED as (1) "the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency," (2) "the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct," (3) "the actions of the defendant caused the plaintiff to suffer emotional distress" and (4) "the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it").   A plaintiff is required to plead facts satisfying all four elements.

The Plaintiff's claim fails on the fourth element because the complaint lacks any description of the emotional distress suffered by the Plaintiff.  In neither the Facts Section nor the Claims Section does the Plaintiff plead any detail regarding the emotional distress suffered.  In each paragraph the Plaintiff describes his injury as "severe emotional distress."  ECF No. 1-1, Compl. ¶¶ 21, 50, 51, 52.  This description does not meet the standard established in Travis.  504 S.E.2d at 425; see Patrick, 937 F. Supp. 2d at 791 ("Although Plaintiffs state in a conclusory fashion that they suffered extreme emotional distress that no reasonable person could endure, they plead no facts describing such distress, any physical, mental, or emotional injuries, any treatment, or the impact such suffering has had on their lives.").  Therefore, because the Plaintiff "tenders 'naked assertions' devoid of 'further factual enhancements,'" the Court finds that the Plaintiff has failed to state a claim of IIED.  See Ashcroft, 556 U.S. at 678.

Moreover, the Plaintiff's IIED claim is duplicative of his claim for assault and battery because both claims arise out of the same underlying event and injuries.  Searls, 2016 WL 4698547, at *4 (citing Criss, 356 S.E.2d 620).  West Virginia state "law does not permit a double satisfaction for a single injury," so the Plaintiff "may not recover damages twice for the same injury simply because he has two legal theories." See Harless, 289 S.E.2d at 697.

Accordingly, Defendant Carinelli's motion to dismiss Count Six of the Plaintiff's complaint is **GRANTED**.

### 4.  Count Three: Fifth Amendment Violation

As discussed in this Order more thoroughly above, a due process cause of action under the Fifth Amendment against state actors is not actionable under section 1983.

The Fifth Amendment's Due Process Clause applies to the federal government, while the Fourteenth Amendment's Due Process Clause applies to state and local governments. Dusenbery, 534 U.S. at 167 ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law." (internal quotations omitted)); see also Lugar v. Edmonson Oil Co., 457 U.S. 922 (1982) (equating "state action" under Fourteenth Amendment with "under color of law" for Section 1983 purposes). Section 1983 is a vehicle by which plaintiffs can assert claims against state actors, making the Fourteenth Amendment the proper constitutional amendment to assert due process protections claims under. U.S. Const. amend XIV ("[N]or shall any *State* deprive any person of life, liberty, or property, without due process of law . . ." (emphasis added)).   Because the Plaintiff has pled his due process claim under the Fifth Amendment, this claim is not actionable under section 1983 and must be dismissed.

Accordingly, Defendant Carinelli's motion to dismiss Count Three of the Plaintiff's Complaint is **GRANTED**.

### 5.  Qualified Immunity

Defendant Carinelli asserts that he is shielded from liability by qualified immunity because the Plaintiff has failed to plead sufficient facts showing that Defendant Carinelli violated a constitutional right that was clearly established at the time.  An official seeking to invoke the protections of qualified immunity "must demonstrate that (1) a plaintiff has not alleged or shown facts that make out a violation of a constitutional right, or that (2) the right at issue was [not] clearly established at the time of its alleged violation." Owens, 767 F.3d at 395-96 (alteration in original) (internal quotation marks omitted).  "[C]ourts have

discretion to decide which of the two prongs of [the] qualified-immunity analysis to tackle first." <u>Ashcroft</u>, 563 U.S. at 735.

Here, the Plaintiff has alleged two constitutional violations against Defendant Carinelli: a Fifth Amendment due process violation and an Eighth Amendment cruel and unusual punishment violation.  The Court has already found that the Plaintiff has failed to state facts sufficient to allege a Fifth Amendment violation.  Therefore, having satisfied the first prong of the qualified immunity test, Defendant Carinelli is entitled to the protection of qualified immunity against the Plaintiff's Fifth Amendment claim.

This leaves the Plaintiff's Eighth Amendment claim.  The Court has already found that the Plaintiff has alleged facts that establish a plausible claim under both the excessive force and deliberate indifference standards of the Eighth Amendment.  The remaining issue is whether the Plaintiff's right was clearly established at the time of the violation.

A right is clearly established when "its contours are sufficiently clear that 'a reasonable official would understand that what he is doing violates that right.'" <u>Carroll</u>, 574 U.S. at 17 (quoting <u>Anderson</u>, 483 U.S. at 640).  The illegality of the official's conduct must be "apparent" in "light of pre-existing law."  <u>Anderson</u>, 483 U.S. at 640.  A court generally need only look to decisions of the United States Supreme Court, the controlling court of appeals, and the highest court of the state where the case arose to determine whether the law clearly establishes a right.  <u>Owens ex rel. Owens</u>, 372 F.3d at 279.  However, a plaintiff can pierce the veil of qualified immunity by citing "'to cases of controlling authority in their jurisdiction at the time of the incident' or to 'a consensus of cases of persuasive authority.'"  <u>Booker</u>, 855 F.3d at 539 (quoting <u>Ashcroft</u>, 563 U.S. at 742).

While the Plaintiff failed to support his response with case law, the Court, in its duty to resolve the Defendant's motion, found decisions from the controlling court of appeals that establishes the Plaintiff's right was clearly established at the time of the violation. The Fourth Circuit has recognized that a correctional officer is not entitled to qualified immunity for deploying excessive force "where the victim is restrained, compliant, and incapable of resisting or protecting himself, and otherwise presents no physical threat in any way." See e.g., Thompson, 878 F.3d at 102.  The Plaintiff alleges that he was already restrained on the ground by multiple correctional officers when his pants were removed and his genital area was beaten and pepper sprayed.

Further, the Fourth Circuit in 2008 provided guidance on the use of chemical agents, like pepper spray, on prisoners.  Iko, 535 F.3d at 239-40. The Fourth Circuit held that using pepper spray on a docile or compliant prisoner, or depriving a prisoner of a proper opportunity to fully decontaminate, including forcing them to remain in their contaminated clothes, demonstrates maliciousness and qualifies as excessive force.  Id. at 239-41.  Additionally, the Fourth Circuit has found that "that prison officials violate the Eighth Amendment by using 'mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain.'" Greene v. Feaster, 733 F. App'x 80, 82 (4th Cir. 2018).  Here, the Plaintiff's right to be free from the use of pepper spray once restrained and the right to be decontaminated afterwards was clearly established at the time it was violated.[4]

---

[4] Indeed, courts across the country have held that using chemical agents may constitute excessive force for numerous reasons.  Most cases fall into one of four categories: (1) when an officer uses more than a reasonable amount of a chemical agent, see e.g., Furnace v. Sullivan, 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer discharged can of pepper spray until empty, and another officer joined in); (2) when an officer uses a chemical agent without first giving a verbal order, see e.g., Johnson v. Blaukat, 453 F.3d 1108 (8th Cir. 2006) (finding an Eighth Amendment claim where officers allegedly used pepper spray without prior verbal command); (3) when an officer uses a chemical agent on

Therefore, because the Plaintiff has alleged facts that plausibly describe a violation of his Eighth Amendment right to be free of cruel and unusual punishment and that right was clearly established at the time it was violated, Defendant Carinelli is not protected by qualified immunity against Count One of the Plaintiff's Complaint.

### 6.  Official Capacity

Like the other Defendants in this case, Defendant Carinelli is named in both his personal and official capacities.  The Eleventh Amendment prohibits a plaintiff from filing suit against a state government in federal court.   U.S. Const. amend. XI.  By naming the Defendant in his official capacity, it is no different than naming the State of West Virginia itself.  Lewis, 137 S.Ct. at 1291.  More specifically, with regard to claims made pursuant to section 1983, "[n]either a State nor its officials acting in their official capacities are 'persons under § 1983." Will, 491 U.S. at 71.

Here, Defendant Carinelli asserts that he cannot be sued in his official capacity. Indeed, the Court finds that Defendant Carinelli is immune from suit in his official capacity due to the protections afforded him by sovereign immunity.   Accordingly, Defendant Carinelli's motion to dismiss all claims against him in his official capacity is **GRANTED**.

### 7.  Conclusion

The Court **GRANTS IN PART AND DENIES IN PART** Defendant Carinelli's Motion to Dismiss [ECF No. 9].  The Court **DISMISSES** all counts against Defendant Carinelli in his official capacity due to sovereign immunity.  The Court **DISMISSES** Counts Three and

---

compliant or subdued inmate, see e.g., Tedder v. Johnson, 527 F. App'x 269 (4th Cir. 2013) (stating that pepper spray employed on visibly sick inmate may constitute excessive force); and (4) when an officer withholds medical attention after pepper spraying an inmate, see e.g., Foulk v. Charrier, 262 F.3d 687 (8th Cir. 2001) (affirming Eighth Amendment verdict against officer where, after officer "sprayed pepper spray directly into [inmate's] face," inmate "received no medical care and had no ability to wash off the pepper spray, [and] continued to feel its painful effects for several days").

Six against Defendant Carinelli in his personal capacity for failure to state a claim upon which relief can be granted. Counts One and Five remain pending against Defendant Carinelli in his personal capacity.

### D. Plaintiff's Requests for Leave to Amend

The Plaintiff has not filed a formal motion for leave to amend, but the Plaintiff repeatedly sprinkles in requests for leave to amend throughout his pleadings. ECF No. 10 at 4, 5, 8, 11, 12; ECF No. 15 at 4, 5, 7, 10. Pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, "[a] party may amend its pleading once as a matter of course . . . if the pleading is one to which a responsive pleading is required, [within] 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). However, "[i]n all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).

As noted above in the discussion of this case's procedural history, the Plaintiff has been afforded numerous opportunities to amend his complaint. The decision to grant or refuse leave to amend rests in the sound discretion of the trial court. Foman v. Davis, 371 U.S. 178, 182 (1962). While a court should freely give leave when justice requires, a district court has discretion to deny a motion to amend so long as it does not outright refuse "to grant the leave without any justifying reason." Id. Valid reasons for denying leave to amend include, but are not limited to, "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." Id.

36

Since first filing a civil action on the facts underlying the instant complaint, the Plaintiff has been afforded leave time and time again to amend his complaint.  It is not in the interest of justice or judicial economy for the Court to continue to delay proceedings in this case so that the Plaintiff may amend his pleading each time his pleading fails to plausibly state a cause of action.   Accordingly, the Plaintiff's requests for leave to amend his complaint are **DENIED**.

### E.  Defendants' Joint Motion to Stay Discovery [ECF No. 13]

The Defendants filed a joint motion requesting that the Court stay discovery and initial disclosures pending resolution of the Defendants' motions to dismiss.  While the Court possesses broad power to stay discovery, Fed. R. Civ. P. 26(c)(1)(A), the Court finds that this motion is moot now that each of the Defendants' pending motions to dismiss have been ruled upon.  Therefore, the Defendant's Joint Motion to Stay Discovery [ECF No. 13] is **DENIED as MOOT**.

## IV.    CONCLUSION

For the foregoing reasons, this Court **GRANTS IN PART AND DENIES IN PART** Defendant Bean's Motion to Dismiss [ECF No. 4].  The Court **DISMISSES** all counts against Defendant Bean in his official capacity due to sovereign immunity.  The Court **DISMISSES** Counts Three and Six against Defendant Bean in his personal capacity for failure to state a claim upon which relief can be granted.  Counts One and Five remain pending against Defendant Bean in his personal capacity.

The Court **GRANTS** the Administrator Defendant's Motion to Dismiss [ECF No. 5]. The Administrator Defendants are dismissed from all Counts in the Plaintiff's complaint because the Plaintiff failed to state a plausible claim against any of the Administrator Defendants.  Further, the Administrator Defendants are protected by qualified immunity

for the claims against them in their personal capacity and by sovereign immunity for the claims against them in their official capacity.

The Court **GRANTS IN PART AND DENIES IN PART** Defendant Carinelli's Motion to Dismiss [ECF No. 9].  The Court **DISMISSES** all counts against Defendant Carinelli in his official capacity due to sovereign immunity.  The Court **DISMISSES** Counts Three and Six against Defendant Carinelli in his personal capacity for failure to state a claim upon which relief can be granted.  Counts One and Five remain pending against Defendant Carinelli in his personal capacity.

Lastly, the Court **ORDERS** that the Defendant's Joint Motion to Stay Discovery [ECF No. 13] be **DENIED as MOOT**.

The Clerk of Court is **DIRECTED** to transmit copies of this Order to all counsel of record herein.

**DATED**: August 5, 2022

GINA M. GROH
UNITED STATES DISTRICT JUDGE